Jasen, J. (dissenting).
I would affirm.
The trial court, after a full hearing, determined that defendant did not tell the truth when he claimed his guilty plea was coerced by conditions in the Queens House of Detention (QHD). This finding of fact was unanimously affirmed by the Appellate Division.
In my opinion, the undisputed factual history of this case convincingly supports the conclusion of the courts below — that the defendant’s plea of guilty was voluntarily interposed. Certainly, nothing is present in this record which would require reversal, as a matter of law, of the affirmed findings of fact. This being so, it is an undoubted abuse of our powers of review. *320 (Cohen and Karger, Powers of the New York Court of Appeals, § 198, subd. [b], p. 745.)
A review of the record discloses that “ [tjhere has been a studied effort on this defendant’s part * * * to avoid going to trial. ’ ’ The prosecutor, at the hearing on the motion to withdraw the plea, stated, ‘1 This is a case where the defendant was indicted on April 22, 1970. We have been prepared to go to trial with this case since June 3 of 1970 * * * [I]t’s been on the calendar almost thirty, forty times.” Defendant’s own counsel testified at the hearing that he told the defendant on October 30, 1970 that “ we would have to go to trial on this case and that the Court would not permit' us to delay any more ’ ’.
On November 9, 1970,. defense counsel was ready to take defendant’s case to trial. He had requested the warden have defendant’s hair and beard cut to make defendant presentable. Defendant’s mother was asked to bring clothing to the defendant for that same purpose. At this point, defendant, who had previously been informed that Legal Aid would not accept a plea of guilty from an innocent man, stated he wished to plead guilty, and related the details of the crimes to his attorney. Defense counsel testified he had never told defendant that pleading guilty would obtain a transfer from QHD. Further, defense counsel testified that the ‘1 [defendant] did not tell me he was pleading guilty to this crime because he wanted to get out of the jurisdiction. ’ ’ An agreement was reached by defense counsel with the prosecutor and court that defendant would plead guilty to a class E felony in satisfaction of all counts, but not including the sodomy indictment. It was only after being informed of this agreement that defendant 1 ‘ then asked [defense counsel] to go into the courtroom and ask the Judge whether he could be sent to the Tombs.” Defense counsel informed the defendant that 11 [the Judge] would consider the possibility of sending him to the Tombs, but it could not be the basis of the plea; that he was giving [defense counsel] no promises as to what he was going to do ”. The prosecutor brought the outstanding Queens sodomy indictment to the court’s attention, and the court indicated that trial on that indictment would bar defendant’s transfer from QHD. The defendant then agreed to plead guilty to the dangerous weapon and stolen property charges as a class D felony, and thus dis *321 pose of the sodomy charge as well. In pleading guilty before the court, the defendant admitted the details of the dangerous weapon and stolen property charges.
The timing and other circumstances of this case convincingly demonstrate the hearing court did not abuse its discretion in denying defendant’s motion to withdraw his guilty plea. Defendant’s fear for his life, as indicated by his motions to transfer from QHD, both before and after the riots, existed at least as early as August 1, and probably even earlier. Still, it was the defendant who purposefully followed a course of delaying the trial—having it postponed approximately 30 times, from June 3,1970 to November 9, 1970. It was only on November 9, 1970, when it had become clear beyond any doubt the case would no longer be delayed, that defendant chose to admit his guilt, both orally and in writing, to counsel and the court.
Moreover, the record discloses that the defendant did not inquire as to the transfer until after the negotiations with regard to the class E felony had been completed. Of importance is the undisputed fact that he was informed immediately that no promises were being made as to whether defendant would be transferred upon his plea of guilty. Defendant, at least according to his own attorney’s testimony, never informed him he was pleading guilty for the purpose of obtaining a transfer.
It should also be noted that defendant’s guilty plea to the class D felony disposed of the first degree sodomy indictment — a class B felony. Thus, the guilty plea yielded defendant a substantial benefit in reducing the permissible sentence that could be imposed.
In my view, on the record before us, it cannot be said, as a matter of law, that the denial of the defendant’s application to withdraw his plea of guilty was an improper exercise of discretion.
Chief Judge Fttld and Judges Burke and Gibson concur with Judge Breitel; Judge Jasen dissents and votes to affirm in a separate opinion in which Judges Scileppi and Bergan concur.
Order reversed and case remitted to Supreme Court, Queens County, for further proceedings in accordance with the opinion herein.